Filed 8/31/15; pub. order 9/17/15 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT, | D066514 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2012-00091137-CU-MC-CTL) |
| HAR CONSTRUCTION, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge. Affirmed.

Finch, Thornton & Baird, Louis J. Blum and Daniel P. Scholz for Defendant and Appellant.

Briggs Law Corporation, Cory J. Briggs, Anthony N. Kim, Mekaela M. Gladden and Isabel E. O'Donnell for Plaintiff and Respondent.

Government Code section 1090 prohibits public officers from having a financial interest in any contract "made by them" in their official capacity.[1] If a public official violates section 1090, the public entity is entitled to recover compensation paid under the contract without restoring any of the benefits received by the contracting party. A taxpayer has standing under certain circumstances to bring a section 1090 action to recover this money on behalf of a public entity.

In this case, San Diegans for Open Government (SanDOG) filed a section 1090 taxpayers' action on behalf of the Sweetwater Union High School District (District) seeking to recover contract payments made to three building contractors, including appellant Har Construction, Inc. SanDOG alleged the District superintendent and several District board members were "financially interested" in the public works contracts and thus the contracts were void. (§ 1090.) About 16 months after SanDOG filed its first amended complaint, Har Construction moved to dismiss the complaint under the anti-SLAPP statute. (§ 425.16.) The court denied the motion because it found SanDOG met its burden to show a probability of prevailing.

Har Construction appeals from the anti-SLAPP denial order. We affirm, but on different grounds. We determine Har Construction's motion was untimely and the anti-SLAPP statute is inapplicable because SanDOG's claims fell within the statute's public interest exemption. (§ 425.17, subd. (b).) We thus do not reach the issue whether

---

[1]     We shall refer to Government Code section 1090 as section 1090. All other unspecified statutory references are to the Code of Civil Procedure.

2

SanDOG's claims arose out of protected activity and, if so, whether SanDOG met its burden to show a probability of prevailing.[2]

FACTUAL AND PROCEDURAL BACKGROUND[3]

In about early January 2012, the San Diego County District Attorney filed a criminal complaint against former District superintendent Jesus Gandara and three District Board of Trustee (Board) members (Pearl Quiñones, Arlie Ricasa, and Greg Sandoval) for alleged wrongdoing related to construction projects at District schools. Less than one month later, SanDOG filed a taxpayers' action against the contractors involved in those projects (Har Construction, Gilbane Building Company (Gilbane), and The Seville Group) seeking to invalidate their contracts with the District under section 1090. Before filing the lawsuit, SanDOG allegedly notified the District of its intent to bring the action and asked whether the District wanted to join, but SanDOG did not receive a response. At the time, the criminally-charged District officials remained in office.

Several months later, in June 2012, SanDOG filed a first amended complaint naming the District as a defendant and naming Har Construction and the two other contractors as defendants and real parties in interest. In the amended complaint,

---

[2]    A codefendant also brought an anti-SLAPP motion, which the court denied on different grounds. This order is subject to a separate appeal. We discuss Har Construction's codefendants only to the extent they are relevant to the issues before us.

[3]    We base our factual summary and analysis solely on the limited appellate record before us. In doing so, we are aware that numerous other filings and issues exist pertaining to matters beyond the scope of the anti-SLAPP order. We offer no opinion on, and do not consider, these other matters and issues in this appeal.

SanDOG challenged the validity of six separate public works projects. As to Har Construction, SanDOG challenged the District's contracts for work at Southwest Middle School and at Southwest High School. Specifically, SanDOG alleged that in June 2009, the District approved a $6.2 million contract with Har Construction for the middle school work, and in July 2009, the District approved an $8.4 million contract with Har Construction for the high school work.

SanDOG alleged these contracts, and the change orders related to these projects, were "made by one or more DISTRICT officials or employees in their official capacities who, at the time of the contract's making, had a financial interest in the contract in violation of . . . Section 1090 . . . ." SanDOG attached a lengthy search warrant affidavit prepared by a district attorney investigator who detailed alleged activities by the public officials in failing to report gifts from the named contractors, misusing the District's credit card, and engaging in conflicts of interest regarding the expenditure of construction funds. After an extensive investigation, the investigator concluded "[t]he evidence suggests the existence of a corrupt 'pay to play' culture surrounding the award of construction contracts by [the District]." The investigator described his interviews with Hector Romero, Har Construction's president, who admitted purchasing (at unspecified times) unreported gifts, dinners, lunches, and drinks for various District officials.

SanDOG alleged the District's contracts (and the associated change orders) with Har Construction were "void" under section 1090 and any benefits received by Har Construction must be restored to the District. SanDOG sought various forms of relief including a constructive trust on all consideration received, a judgment that all contract

4

benefits be returned to the District, and an injunction preventing Har Construction from disbursing funds received from the contracts.[4]

The District and the three contractor defendants demurred to SanDOG's amended complaint. The District asserted the action interfered with its discretionary authority, and the claim was premature and should await the grand jury findings on the criminal allegations against the District officials. SanDOG opposed this argument, asserting "This Court has no reason to believe that the District will initiate any legal action against Real Parties in Interest considering its continuing refusal to do so, even in the face of the District Attorney's identification of numerous illegal financial interests implicating [the Contractors]."

At the hearing on the motions, the court (Judge William Dato) noted that several of the criminally-charged public officials remained on the Board and this appeared to compromise the District's "ability to exercise its discretion free from conflicts of interest." The court ultimately overruled the demurrers, finding SanDOG had standing and it " 'was not seeking to usurp the District's discretion in managing its affairs.' " (*Gilbane Building Co. v. Superior Court* (2014) 223 Cal.App.4th 1527, 1530-1531 (*Gilbane*).)[5]

---

4    Before SanDOG filed its first amended complaint, Har Construction sued the District and various public officials (in a separate action) alleging it had not received full payment on the construction contracts. The appellate record does not contain information about the current status of this lawsuit.

5    In *Gilbane, supra*, 223 Cal.App.4th 1527, this court denied codefendant Gilbane's writ petition challenging the trial court's order overruling its demurrer.

5

About 14 months after the amended complaint was filed, on August 15, 2013, SanDOG and the District entered into a stipulation to change the District's status from defendant to a real party in interest (Stipulation). The Stipulation stated that SanDOG and the District agree "based on information recently obtained from the San Diego County Grand Jury, that DISTRICT should have been designated in the First Amended Pleading as a real party in interest in this lawsuit and not as a defendant or respondent." Six days later, the court entered the stipulation as an order.

Shortly after, Har Construction moved to strike the Stipulation and order. On September 5, 2013, the court (Judge Dato) overruled the objection and denied the motion. The court stated: "*The change of party status effects no substantive change*. There is no possible prejudice to Har [Construction] or any other defendant." (Italics added.)

Two months later, on November 4, 2013, Har Construction moved to strike SanDOG's amended complaint under the anti-SLAPP statute. Har Construction argued the claims arose from its "political contributions and statements made to District officials regarding the contract review and award process" and these activities are "quintessential rights of free speech and petition protected by the Anti-SLAPP statute." Har Construction further argued that SanDOG could not satisfy its burden to show a likelihood of prevailing on the merits because the undisputed facts show Har Construction was awarded the contracts as the low bidder under a " 'hard bid' " procedure, which it said is "not susceptible to bribery and eliminates the discretion of public officials." (See Pub. Contract Code, § 20111.)

Har Construction asserted that although the motion was brought long after the amended complaint was filed, the motion was timely because it was filed less than 60 days after the Stipulation, which Har Construction said reflected a "substantive change to the complaint." Har Construction also stated it was bringing the motion at this time because the District's change to real party in interest "eliminate[s] the possible exception to application of the [anti-SLAPP motion] created by Code of Civil Procedure section 425.17." Har Construction argued that the District's status change meant SanDOG could no longer prove the necessity of private enforcement, which is a required element to establish the public-interest exemption contained in section 425.17, subdivision (b).

The court scheduled the anti-SLAPP motion to be heard in conjunction with Har Construction's summary judgment motion on July 18, 2014, eight months after the anti-SLAPP motion was filed. In the scheduling order, the court noted the delay in setting the hearing was the result of "limited resources" caused by "budgetary constraints."[6]

While the anti-SLAPP motion was pending and before SanDOG filed its opposition motion, the District opposed a motion for judgment on the pleadings filed by codefendant Gilbane. In its opposition filed on July 11, 2014, the District stated that the Stipulation "did nothing to change the District's interest in this case vis-à-vis the other parties" and that SanDOG had properly joined the District "as a necessary party under CCP § 382." The District's counsel said when the amended complaint was filed, the District was "in reality a nonconsenting plaintiff," explaining:

---

[6] After this time, the matter was transferred from Judge Dato to Judge Eddie Sturgeon. All further references to the court are to Judge Sturgeon's rulings.

7

"From the time [the First Amended Complaint] was filed until only recently, the District's Board . . . was unable to convene the necessary quorum to vote on participating in this lawsuit as the named party Plaintiff because of the criminal case. Last fall, SanDOG and the District recogniz[ed] this reality and entered into the Stipulation for Change of Party Status, de-designating the District as a defendant in this action to better reflect the District's true interest in this matter and desire to obtain relief for the beleaguered students and parents of the District. This was done under the Superintendent's authority to manage the day to day affairs of litigation."

The District presented evidence that four new independent members were recently appointed to serve on the Board and it was not until May 2014 that the Board had the authority to approve the District becoming a "co-plaintiff" in the case.[7]

Shortly after, SanDOG filed its response to Har Construction's anti-SLAPP motion, raising four independent grounds for opposing the motion. First, SanDOG argued the motion was brought long after the 60-day deadline, and there was no reasonable basis to permit the late filing. Second, SanDOG argued it was exempt from the anti-SLAPP statute because it satisfied each element of the public-interest exception. (§ 425.17, subd. (b).) Third, SanDOG argued the allegations did not arise from constitutionally protected activity because illegal activity is not protected under the anti-SLAPP statute and the gravamen of the section 1090 claim arose from the *District officials'* alleged wrongful conduct in approving the contracts, and not from *Har*

---

[7] The court (Judge Sturgeon) ultimately granted Gilbane's motion challenging the District's "real party in interest" status, stating "the case will be unable to proceed without District being named as either a nominal defendant or intervening as a plaintiff." The court provided leave for SanDOG to file a second amended complaint.

8

*Construction's* conduct. Fourth, SanDOG submitted the grand jury testimony of Har Construction president Romero, who admitted giving gifts to the District superintendent and certain Board members in his efforts to seek payment for work performed.

In reply, Har Construction reasserted its position that the motion was timely. It also argued that section 425.17, subdivision (b)'s public interest exception was inapplicable because SanDOG did not meet its burden to show: (1) private enforcement was "necessary" as the District now considers itself to be the "true plaintiff"; and (2) the lawsuit imposed a "disproportionate financial burden" on SanDOG. With respect to the likelihood of prevailing on the merits, Har Construction argued SanDOG did not submit evidence that the alleged wrongful activities had any relationship to a specific contract between the District and Har Construction. Har Construction maintained that Romero's grand jury testimony concerned only his interactions with District officials long after the contracts had been executed and concerned only his efforts to be paid for work actually performed.

After conducting a hearing, the court denied the anti-SLAPP motion. It first found the motion was timely. The court stated: "[Har Construction] filed its [SLAPP motion] within 30 days of the amendment to the complaint based upon the stipulation filed changing the status of the real party in interest [District]. The court exercises its discretion to consider this special motion to strike filed after the 60-day period," citing *Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676 (*Chitsazzadeh*).

The court also rejected SanDOG's arguments that the section 425.17 public interest exemption applied. (§ 425.17, subd. (b).) The court found SanDOG proved

9

several of the statutory elements, including that the action would enforce an important right that would confer a significant public benefit and that private enforcement was "necessary." On the necessity element, the court noted that despite the District's expressed intentions, the District had not yet intervened or been named a plaintiff, and "only [SanDOG] has shown the interest and legal capacity to pursue the action." But the court found the statutory exemption inapplicable because SanDOG "fail[ed] to present any admissible evidence that it has suffered any financial burden."

On the merits of the anti-SLAPP motion, the court found Har Construction met its burden to show SanDOG's claims arose from protected conduct, but ultimately denied the motion because it found SanDOG met its burden to show a probability of prevailing on its claims.

## DISCUSSION

### I. *Anti-SLAPP Statute*

A special motion to strike under section 425.16 is a procedural device that allows a defendant to obtain early dismissal of a lawsuit that qualifies as a SLAPP. (§ 425.16, subd. (b)(1).) A SLAPP is a lawsuit " ' " 'aimed at preventing citizens from exercising their political rights or punishing those who have done so.' . . ." . . .' . . . Such suits 'are brought, not to vindicate a legal right, but rather to interfere with the defendant's ability to pursue his or her interests.' . . . The aim is to force the defendants to devote time, energy and money to combat the lawsuit long enough for the plaintiff to accomplish his underlying objectives." (*Rezec v. Sony Pictures Entertainment, Inc.* (2004) 116

10

Cal.App.4th 135, 139.)  Courts must construe this statute "broadly" in favor of the moving party.  (§ 425.16, subd. (a).)

The analysis of an anti-SLAPP motion generally involves two steps.  First, the defendant has the burden to show the defendant's allegedly wrongful conduct was "*in furtherance of*" its free speech or petition rights and that the cause of action *arose* from this protected conduct.  (§ 425.16, subd. (b)(1), italics added.)  Second, if the defendant meets this burden, the burden shifts to the plaintiff to show a probability of prevailing.  The plaintiff must " ' "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' "  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

Before engaging in this two-step analysis, a court must consider any claims by the plaintiff that a statutory exemption contained in section 425.17 applies.  (*Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 840; see *Save Westwood Village v. Luskin* (2014) 233 Cal.App.4th 135, 143 (*Save Westwood Village*); *Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1460 (*Tourgeman*).)  Section 425.17 identifies two statutory exemptions, one of which is the "public interest" exemption at issue in this case.  (§ 425.17, subd. (b).)  A plaintiff has the burden to establish the applicability of this exemption.  (See *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 25-26.)

On appeal, we apply a de novo review standard to determine whether the parties satisfied their burdens under sections 425.16 and 425.17.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055; *Save Westwood Village, supra*, 233 Cal.App.4th at p. 143.)  We are

11

not bound by the court's findings and conduct an independent review of the entire record. If the trial court's decision is correct on any theory, we must affirm the order. (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573.)

II. *Summary of Legal Principles Governing Section 1090 Claims*

Section 1090 " 'prohibits any public officers or employees from having any financial interest, direct or indirect, in any contract made by them in their official capacity or by any board or commission of which they are a member.' " (*Chapman v. Superior Court* (2005) 130 Cal.App.4th 261, 274; see *Los Angeles Memorial Coliseum Com. v. Insomniac, Inc.* (2015) 233 Cal.App.4th 803, 823 (*Memorial Coliseum*).) "Section 1090 is intended ' "to insure absolute loyalty and undivided allegiance to the best interest of the [governmental agency] they serve and to remove all direct and indirect influence of an interested officer as well as to discourage deliberate dishonesty. [Citations.]" [Citation.]' " (*Chapman, supra*, 130 Cal.App.4th at p. 274.)

" '[W]here a contract is made in violation of section 1090, the public entity involved is entitled to recover any compensation that it has paid under the contract without restoring any of the benefits it has received.' (*Finnegan v. Schrader* (2001) 91 Cal.App.4th 572, 583. . . .)" (*Gilbane, supra*, 223 Cal.App.4th at p. 1532.) " 'Because contracts in violation of section 1090 are against fundamental public policy, *parties who participate in the unlawful making of the contract . . . forfeit all interest flowing from the contract* to avoid the prospect of unjust enrichment.' " (*Memorial Coliseum, supra*, 233 Cal.App.4th at p. 823.) This may include a contractor who claims it provided gifts or services merely to accommodate a public official's extortionate demand. " 'If a corrupt

12

public official demands an extortion payment in exchange for a public contract, the victim should not pay. Instead, the victim should report the corrupt public official to . . . law enforcement. If the victim pays and the extortion is discovered, the victim will not be permitted to retain *any consideration received*. . . .' " (*Id.* at p. 826.)

"Taxpayers may sue under section 1090 . . . to have improper contracts declared void. [Citations.] These lawsuits may be against the public agency as well as the private parties who entered into the improper contract with the public agency. [Citations.] [¶] However, '[a] taxpayer may not bring an action on behalf of a public agency unless the governing body has a duty to act, and has refused to do so.' . . . [But] [w]here the public agency has expended funds illegally or for an unlawful purpose and its management is in the hands of the persons accused of the wrongdoing, a taxpayer is not required to make a demand on the public agency as it would be unavailing. [Citations.]" (*Gilbane, supra*, 223 Cal.App.4th at pp. 1532-1533.)

### III. *Timeliness*

Section 425.16 contains a timeliness standard for bringing an anti-SLAPP motion. "The special motion may be filed within 60 days of the service of the complaint, or in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing." (§ 425.16, subd. (f).) The purpose of the time limitation is to permit " 'the defendant to test the foundation of the plaintiff's action before having to "devote its time, energy and resources to combating" a "meritless" lawsuit. . . .' " (*Platypus Wear, Inc. v. Goldberg*

13

(2008) 166 Cal.App.4th 772, 783 (*Platypus*).) The statutory deadline also seeks "to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings." (*Ibid.*) All discovery is automatically stayed once an anti-SLAPP motion is filed. (§ 425.16, subd. (g).)

A court "enjoys considerable discretion" in determining "whether to allow [a] late filing of an anti-SLAPP motion." (*Platypus, supra*, 166 Cal.App.4th at p. 787.) However, the court must exercise this discretion consistent with the purposes of the statute and must be mindful that the 60-day deadline is the general rule. (*Id.* at pp. 775-776, 782-784, 787.) "[T]he Legislature's act in allowing an interlocutory appeal of the denial of an anti-SLAPP motion is clearly tied to the fact that the statute contemplates that most such motions will be filed within 60 days of the filing of the complaint." (*Id.* at p. 787.) Thus, a "trial court must be wary about freely granting a party the right to file an anti-SLAPP motion past the 60-day deadline." (*Ibid.*) In determining whether to permit a late motion, the most important consideration is whether the filing advances the anti-SLAPP statute's purpose of examining the merits of covered lawsuits in the early stages of the proceedings. (*Id.* at pp. 775-776, 782-784, 787; see *Chitsazzadeh, supra*, 199 Cal.App.4th at p. 682.) Other relevant factors include the length of the delay, the reasons for the late filing, and any undue prejudice to the plaintiff. (See *Platypus, supra*, 166 Cal.App.4th at p. 787.)

In this case, Har Construction filed its motion more than 16 months after the first amended complaint was filed. During this time, the parties appeared before the court on various motions, and Har Construction served written discovery requests to which

14

SanDOG had responded. On its face, this lengthy delay was contrary to the anti-SLAPP statute's fundamental purpose of requiring a court to evaluate covered claims at the outset of the action. Additionally, there was obvious prejudice involved in halting all discovery, particularly given the additional seven-month delay before a hearing could be scheduled on the matter.

The court nonetheless found the motion timely because it was brought within 60 days of the parties' Stipulation changing the District's status from defendant to real party in interest. Har Construction asserts this ground was proper because the status change was "substantive[ ]" and "akin to amending the complaint." This assertion is contradicted by the record. When it denied Har Construction's motion to strike the Stipulation, the court specifically ruled that the "change of party status effects no substantive change. . . ." We agree. The allegations against Har Construction were identical before and after the Stipulation. Har Construction's exposure and defenses remained the same. The fact that the District no longer was named a "defendant" and instead was a "real party in interest" was not material to the issue of Har Construction's substantive liability under section 1090 and to the court's authority to void Har Construction's contracts (assuming legal and factual support for the 1090 claim). Absent additional facts, there is no reasoned basis to allow a late anti-SLAPP motion based on a nonsubstantive change in a party's pleading.

In its moving papers below, Har Construction made clear the primary reason it waited to bring the motion until after the Stipulation was that it believed SanDOG would no longer prevail on an argument that private enforcement was "necessary," a required

15

element to establish the applicability of the statutory public interest exemption. (§ 425.17, subd. (b)(3).) However, this justification was factually and legally flawed.

First, there is no showing on the record before us that private enforcement was no longer necessary. In the same anti-SLAPP order in which the court found the motion timely, the court stated that "In this case, the District has not intervened" and "only plaintiff has shown the interest and legal capacity to pursue the action." Based on these facts, the court made an express factual finding that private enforcement remained "necessary." The evidence supported this conclusion. At the time of the Stipulation and the filing of the anti-SLAPP motion, the District remained unable to independently pursue the section 1090 claim because it did not have the ability to obtain a quorum of disinterested Board members. The evidence showed that it was not until May 2014 that a disinterested Board was appointed.

Additionally, because an anti-SLAPP motion seeks to preclude the litigation at the outset of the filing, the issue whether private enforcement was necessary must be viewed at that time. (See *Tourgeman, supra*, 222 Cal.App.4th at p. 1460 [court must rely on complaint allegations in determining applicability of public interest exception].) The fact that circumstances may change cannot logically provide a basis for bringing a late anti-SLAPP motion. An anti-SLAPP motion is not a vehicle for a defendant to obtain a dismissal of claims in the middle of litigation; it is a procedural device to prevent costly, unmeritorious litigation at the initiation of the lawsuit. When a case has been pending long after the 60-day period, the parties have presumably engaged in pretrial litigation and the purposes of an anti-SLAPP motion are no longer applicable. In this case, Har

16

Construction served written discovery requests, and SanDOG had responded to those requests, and the parties appeared before the court on various motions, including a demurrer and a motion to strike the stipulation. At that point, the parties were free to bring other dispositive motions (e.g., a motion for summary judgment or judgment on the pleadings), but the procedurally complex anti-SLAPP statutory scheme was no longer applicable.

We reject Har Construction's additional argument that SanDOG waived the timeliness issue. In opposing the motion, SanDOG asserted the issue in a separate section titled "**The Motion Is Untimely**" in which it disputed Har Construction's assertion that the District's changed status justified the late filing. This written objection preserved the claim. Har Construction contends SanDOG nonetheless waived the issue because it participated in a hearing to specially schedule the anti-SLAPP motion hearing without mentioning the timeliness issue. This argument is unavailing. The fact that a party participates in a hearing to set a briefing or hearing schedule does not show a party forfeits arguments clearly set forth in a written brief on the matter. (See *Platypus, supra*, 166 Cal.App.4th at pp. 781-782.)

*Chitsazzadeh, supra*, 199 Cal.App.4th 676, relied upon by Har Construction, does not support its position. *Chitsazzadeh* upheld the trial court's ruling that a six-month delay in filing an anti-SLAPP motion was untimely. (*Id.* at p. 682.) The court noted the purpose of the 60-day timing requirement "is to facilitate the dismissal of an action subject to a special motion to strike early in the litigation so as to minimize the cost to the defendant" and stated that when the trial court exercises its discretion on the timing issue,

17

it should consider whether "the purposes of the anti-SLAPP statute would best be served" by granting the motion.  (*Ibid.*)  In this case, the purpose of the anti-SLAPP statute was not served by the court's consideration of the untimely motion.  (See *Platypus, supra*, 166 Cal.App.4th at p. 776; *Kunysz v. Sandler* (2007) 146 Cal.App.4th 1540, 1543.)[8]

## IV.  *Public Interest Exception*

We alternatively conclude that even if the motion was timely, the public interest exemption set forth in section 425.17, subdivision (b) precluded the court from granting the anti-SLAPP motion.  " '[T]he Legislature enacted section 425.17 to curb the "disturbing abuse" of the anti-SLAPP statute,' " including " 'to prevent the use of the anti-SLAPP device against "specified *public interest actions*" . . . .' "  (*Tourgeman, supra*, 222 Cal.App.4th at p. 1459.)

Section 425.17, subdivision (b) states:

> "Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist:  [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member.  A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision.  [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.  [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter."

---

8    Although SanDOG did not bring a cross-appeal to challenge the court's ruling on the timing issue, Har Construction does not dispute that we may properly consider the issue.  (See *Platypus, supra*, 166 Cal.App.4th at pp. 780-781.)

18

The trial court found SanDOG met its burden to show the first two elements. On the third element, the court found SanDOG established private enforcement was necessary, but concluded SanDOG did not present sufficient evidence showing the matter would "place[] a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." The court reasoned that SanDOG is a tax-exempt organization without expenses or income, and did not produce any evidence that it had "advanced costs or any money in this case."

SanDOG challenges the court's conclusion on the "disproportionate financial burden" element. Har Construction counters that: (1) this issue is not properly before this court because SanDOG did not file a cross-appeal; (2) the court correctly ruled on the "disproportionate financial burden" element; and (3) the court erred in finding SanDOG met its burden on the necessity issue. As explained below, we find SanDOG's argument is meritorious, and reject Har Construction's counter arguments.

### A. *Appealability*

Generally, a respondent who has not appealed from a judgment or appealable order may not urge error on appeal. However, an exception applies where a respondent raises an issue on an interim ruling for the purpose of determining whether the appellant was prejudiced by the asserted error. (See *Platypus, supra*, 166 Cal.App.4th at pp. 780-781; see also *Adoption of H.R.* (2012) 205 Cal.App.4th 455, 466-467.)

The court's ruling on the section 425.17 issue falls within this exception. A claim that the public interest exemption applies is a threshold issue that must be addressed

19

before considering an anti-SLAPP motion. (See *Save Westwood Village, supra*, 233 Cal.App.4th at p. 143.) Thus, a respondent may assert a court erred in denying a section 425.17 motion in response to an appeal challenging the denial of a section 425.16 motion. An error in denying a section 425.17 motion would mean any asserted errors on the section 425.16 issues would not be prejudicial. A finding that the anti-SLAPP statute did not apply to SanDOG's lawsuit would lead to affirmance (albeit on a ground different from the trial court's reasoning), and therefore SanDOG may raise this issue on appeal without filing a cross-appeal.

### B. *Disproportionate Financial Burden*

To establish the section 425.17, subdivision (b)(3) exception, the plaintiff must show "Private enforcement . . . places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." This element requires a comparison of the plaintiff's financial stake in the outcome with the potential costs of a legal victory. (See *Tourgeman*, *supra*, 222 Cal.App.4th at pp. 1465-1466; see *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 915-916 (*Blanchard*).) " 'The relevant inquiry is whether "the ' "cost of the [plaintiffs'] legal victory transcends [their] personal interest." ' " ' " (*Tourgeman, supra*, at p. 1465.)

The trial court found SanDOG did not meet its burden on this element because SanDOG submitted no admissible evidence that it "advanced costs or any money in this case," and it is a "tax-exempt organization that has no receipts or expenses."

This reasoning is faulty. The undisputed facts show SanDOG—a public interest entity formed to monitor governmental conduct—has no financial interest in bringing the

action.  The action was brought solely to obtain the return of contract payments *to the District*, for the benefit *of the District*.  A plaintiff who does not seek "*any* financial benefit from the lawsuit" will generally satisfy the statute's "disproportionate financial burden" requirement.  (*Tourgeman, supra*, 222 Cal.App.4th at p. 1465; accord *Northern Cal. Carpenters Regional Council v. Warmington Hercules Assocs.* (2004) 124 Cal.App.4th 296, 301 (*Carpenters*).)  Moreover, the applicability of the public interest exemption (including the financial burden element) is determined by examining the allegations of the complaint, and does not require the plaintiff to proffer affirmative evidence.  (*Tourgeman, supra*, 222 Cal.App.4th at p. 1466; *People ex rel. Strathmann v. Acacia Research Corp.* (2012) 210 Cal.App.4th 487, 499-500.)  Under the amended complaint's allegations, SanDOG could reasonably expect to incur significant litigation costs and expenses in proving its allegations, as well as the possibility of an adverse cost award.

Har Construction argues these litigation costs are irrelevant because SanDOG has no income or assets and thus will not be individually responsible for paying these costs. However, even assuming this is true, the fact that another person or entity may ultimately bear the plaintiff's litigation costs or fees does not preclude a disproportionate financial burden finding.  (See *Tourgeman, supra*, 222 Cal.App.4th at p. 1466, fn. 15 [rejecting argument that plaintiff did not meet disproportionate financial burden element if plaintiff was being represented on a contingent-fee basis].)  In determining disproportionate burden, the focus is on the relationship between the costs and the potential financial benefits from the litigation.  (*Id.* at p. 1465; *Carpenters, supra*, 124 Cal.App.4th at p.

301.) A party that has *no* possibility of personally benefiting from the litigation generally need not prove it will personally bear the potential cost and attorney fee burden of the litigation. (See *Tourgeman, supra*, at p. 1465.) A contrary finding would create a loophole in the public interest exemption that could not have been intended by the Legislature.[9]

This conclusion is supported by judicial interpretations of section 1021.5, the private attorney general fees statute. "[S]ection 425.17 was modeled, in part, on section 1021.5," and the three elements of the public interest exemption " 'mirror' " the elements of the private attorney general statute. (*Tourgeman, supra,* 222 Cal.App.4th at pp. 1459-1460, 1465, fn. 14; *Blanchard, supra,* 123 Cal.App.4th at p. 914.) Interpreting section 1021.5, the courts have held that a party bringing an action on behalf of others may prove disproportionate financial burden even if the party was not individually responsible for paying fees in the litigation. (See *Otto v. Los Angeles Unified School Dist.* (2003) 106 Cal.App.4th 328, 333-334; see also *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321; *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1260.) Under section 1021.5, a fee award " 'will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' "

---

[9] Contrary to Har Construction's arguments, *Tourgeman, supra*, 222 Cal.App.4th 1447 did not hold that a plaintiff must show "the possibility of costs to the individual" before the party can establish the lawsuit comes within the public interest exemption. *Tourgeman* held a litigant is not required to make an affirmative evidentiary showing on this element *and* noted that the individual plaintiff in that case "could reasonably have expected to incur significant litigation costs in attempting to prove [his claims]." (*Id.* at pp. 1465-1466.) This latter statement does not reasonably suggest the statutory exemption is unavailable if a third party will ultimately bear the litigation costs.

22

(*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1216.)  In this case, any potential litigation costs necessarily exceed the expected value of the litigant's own monetary award.

### C. *Necessity of Private Enforcement*

Har Construction challenges the court's finding that private enforcement was "necessary" within the meaning of section 425.17, subdivision (b)(3).)  As discussed above, the court found SanDOG satisfied this element because the record did not show the District was willing and able to move forward with the litigation.

In contending the court erred, Har Construction cites to various portions of the record in which the District's attorney indicated the District intended (in the future) to prosecute the section 1090 claim now that it has a disinterested Board.  However, the court specifically found that "notwithstanding" these statements, the District "*has not intervened*" as a plaintiff.  (Italics added.)  Other than the unsupported statements of counsel, there was no *evidence* before the court that the District intended to fully substitute for SanDOG's position in the lawsuit.  As this court has held, "the *possibility* that a public entity might bring a lawsuit to vindicate certain rights does not demonstrate that a private plaintiff's action to vindicate such rights was not necessary where . . . the public entity has not filed such a lawsuit." (*Tourgeman, supra*, 222 Cal.App.4th at pp. 1464-1465; see *Strathmann, supra*, 210 Cal.App.4th at p. 504; *Carpenters, supra*, 124 Cal.App.4th at p. 301.)

In its appellate brief, Har Construction claims the District is currently asserting a section 1090 claim as a defense in Har Construction's separate lawsuit against it.

However, Har Construction provides no record citation for this assertion, and on our independent record review, we have found no support for the claim. The evidence shows that in defending the Har Construction lawsuit, the District did not initially seek "to recover the monies it paid." At the hearing on the anti-SLAPP motion, Har Construction's counsel said the parties are in mediation and the District's counsel "has told us [the District] intend[s] on using 1090 as a defense to [Har Construction's] claims." However, this statement of future intent is insufficient to show the private litigation was unnecessary for purposes of section 425.17, subdivision (b)(3)'s applicability. (See *Tourgeman, supra*, 222 Cal.App.4th at pp. 1464-1465.)

Finally, as discussed above, in determining whether the action is a public interest lawsuit for purposes of the anti-SLAPP statute, we focus on the events that were occurring at the time the challenged pleading was filed. The evidence shows that when the amended complaint was filed in June 2012, the Board had not, and could not, take any action because it did not have sufficient disinterested Board members available for a quorum. It was not until May 2014 (about two years after the amended complaint was filed) that four disinterested Board members were appointed, and the District expressed an interest in becoming a coplaintiff in the action.

DISPOSITION

Order affirmed.  Appellant to pay respondent's costs on appeal.


                                                    HALLER, Acting P. J.

WE CONCUR:


McINTYRE, J.


AARON, J.

25

Filed 9/17/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>HAR CONSTRUCTION, INC.,<br><br>   Defendant and Appellant. | D066514<br><br><br><br>(Super. Ct. No. 37-2012-00091137-<br> CU-MC-CTL)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed August 31, 2015 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to California Rules of Court, rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HALLER, Acting P.J.

cc: All Parties