Filed 2/16/16  Roth v. Finestone CA2/7
Received for posting 2/17/16

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STEVEN ROTH, | B258822 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC539135) |
| v. | |
| NEIL R. FINESTONE, | |
| Defendant and Appellant. | |

         APPEAL from an order of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Affirmed.

         Law Offices of Robert Epstein and Robert Epstein for Defendant and Appellant.

         Benedon & Serlin, Gerald M. Serlin and Wendy S. Albers for Plaintiff and Respondent.

_____

Code of Civil Procedure section 425.16, subdivision (f),[1] provides a special motion to strike a complaint pursuant to section 425.16, subdivision (b) (an anti-SLAPP motion) "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Neil R. Finestone contends the trial court abused its discretion in denying as untimely his special motion to strike Steven Roth's complaint for tortious interference with contract, filed 103 days after service of the complaint. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Roth's Complaint*

On March 11, 2014 Roth, representing himself, filed an unverified complaint against Finestone, an insurance agent, and several Doe defendants alleging a single cause of action for tortious interference with contract. Roth's complaint alleged he had been retained in October 2011 by Dr. Zein Obagi and his wife, Samar Obagi, to act as a consultant with their personal attorney regarding possible litigation relating to pension programs adopted by the Obagis' corporations including insurance products sold by American General Life (AIG). The lawsuit, if pursued, would be predicated on claims that, through false and misleading representations, AIG, its agents and various promoters had sold the Obagis indexed universal life insurance policies with excessive and unduly expensive death benefits. Roth subsequently introduced the Obagis to litigation counsel, which they retained (the law firm of Engstrom, Lipscomb & Lack). Roth agreed to continue his consulting services with new counsel on a contingency fee basis and to forego unpaid hourly fees earned under the previous agreement (approximately $17,000).

Prior to retaining litigation counsel, the Obagis also hired Finestone to act as their insurance agent and to assist with the lawsuit, including mitigating their damages by reducing death benefits in the existing AIG policies as Roth had recommended. Roth alleged Finestone had been instructed to "run all ideas, intended actions and

---

[1] Statutory references are to this code unless otherwise indicated.

2

communications" relating to the Obagis, the pension plans, the AIG insurance policies and the contemplated lawsuit by Roth and the attorneys before doing anything. Rather than comply with these instructions, Finestone held private meetings with Samar Obagi and would not disclose what was discussed. In addition, not only did Finestone fail to reduce the death benefits in the Obagis' AIG policies, as Roth had directed, but also he contacted AIG and proposed the purchase of additional products, thereby severely compromising the Obagis' potential lawsuit. In December 2013, as a result of Finestone's activities, the litigation firm terminated its representation of the Obagis. No lawsuit was thereafter filed against AIG.

The complaint alleged, as a direct result of Finestone's actions, Roth had been prevented from performing the consulting work he otherwise would have performed and from receiving at least $200,000 in compensation under the contingency fee agreement. (The agreement is not attached to the complaint.) He further alleged Finestone was aware of that contract and intentionally caused its breach. In addition, Roth alleged Finestone had acted for his own monetary gain and in conscious disregard of Roth's rights with the intent to cause injury and harm to Roth, thereby entitling Roth to an award of punitive damages.

2. *Finestone's Answer and Roth's Discovery Demands*

A summons and complaint were personally served on Finestone on March 26, 2014. Finestone, through counsel, filed an answer to the complaint containing a general denial and 12 affirmative defenses on April 24, 2014. On that same date Roth, still self-represented, began his discovery, propounding form interrogatories, document demands and requests for admission. Roth also served deposition subpoenas and requests for production of documents on third parties.

Finestone responded to discovery on May 28 and 29, 2014, asserting objections based on attorney-client privilege and the work-product doctrine to many of the requests. Roth disputed the applicability of the privilege (noting that he and Finestone had been working together with the lawyers), sent meet-and-confer letters and ultimately indicated

3

that, absent an agreement to provide what Roth considered to be proper responses and to extend the time to file discovery motions, he would formally move to compel discovery. No agreement was reached, and Roth moved to compel further discovery responses and documents from Finestone on July 9, 2014. Roth also moved to compel third-party discovery when meet-and-confer efforts proved unsuccessful with those individuals and their counsel.

   3. *Finestone's Special Motion To Strike and Request for Leave To File an Untimely Motion*

On July 9, 2014 Finestone moved pursuant to section 425.16 to strike Roth's complaint. The moving papers asserted Roth's interference cause of action arose from protected activity within the meaning of section 425.15, subdivision (e)(2): "Finestone's acts and communications were made in the context of the lawsuit Roth wanted the Obagis to bring against the [p]romoters and AIG." Finestone also argued Roth could not meet his burden of showing a probability of success on the merits because the complaint was barred by Civil Code section 47, subdivision (b)'s litigation privilege; the contract with which Finestone had allegedly interfered was void because Roth did not have the type of insurance license required to perform the services specified; and claims alleging interference with civil litigation are not actionable.

Recognizing that the motion was made more than 60 days after service of the complaint, Finestone requested the court exercise its discretion under section 425.16, subdivision (f), to permit the late filing. In the memorandum in support of the motion, Finestone's counsel, Robert Epstein, stated the motion had been filed "as quickly as Finestone's counsel could react given his availability and resources." In his declaration, after describing Roth's discovery demands and his meet-and-confer requests following responses from Finestone and the third parties served with deposition subpoenas (including the Obagis), Epstein explained the timing of the motion: "[W]ell after Mr. Finestone answered the Complaint, Mr. Roth's abusive litigation tactics and rhetoric became habitual. I was inundated with numerous improper and burdensome discovery demands, including those directed to various third parties, all requiring my review. In my

4

entire career, I have never had occasion to file an anti-SLAPP motion. But I have never before been accosted by such spurious conduct as Mr. Roth's in this matter. Although this motion could have been brought earlier, it is timely and necessary now. I wrestled with the concept of even engaging in such a protective action, but I can no longer provide sufficient counsel to my client in the face of a bombardment of violative discovery and threats of constant meritless motions, all contrived by Mr. Roth to intimidate and harass Mr. Finestone into paying money, regardless of Mr. Roth's total lack of entitlement. Mr. Finestone and I are justifiably troubled that Mr. Roth will only continue to escalate the pace of his unsupportable demands, initiate more abusive discovery and bring more time wasting, meritless motions. Accordingly, Mr. Finestone respectfully requests that the Court allow the motion to be heard on the merits."

4. *Roth's Opposition and the Trial Court's Ruling*

Roth opposed Finestone's motion, arguing the obligation to respond to properly served discovery does not justify the failure to timely file a special motion to strike. Roth further asserted, even if considered on the merits, Finestone's motion should be denied because Roth's claim for interference with contract did not arise from any protected speech or petitioning activity by Finestone and the declarations submitted by Roth and Steven Shuman, a member of the litigation firm that had been retained by the Obagis to pursue their claims against AIG, established a probability of prevailing on the merits of Roth's interference claim.

After hearing oral argument on August 21, 2014 the court, without reaching the merits, denied the motion as untimely, declining to permit the late-filed motion notwithstanding its discretion to do so under section 425.16, subdivision (f). In its order, which adopted its earlier posted tentative ruling, the court explained, "Where there is no compelling reason for a late-filed motion, the court, in its discretion may deny such a request. [Citation.] Giving due weight to the reasons given in the Epstein declaration for the late filing, moving party presents no such compelling reason for his failure to file an earlier motion . . . . Instead, this motion seems to have been brought within the context of

5

a flurry of discovery brought by plaintiff against third parties and the numerous motions to compel, improper reasons to bring an anti-SLAPP motion."

Finestone filed a timely notice of appeal pursuant to sections 425.16, subdivision (i), and 904.1, subdivision (a)(13).  (But see *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1186-1187 (*Hewlett-Packard*) [suggesting trial court should frame its order declining to hear a late-filed motion under section 425.16 as a denial of leave to file the motion or an order striking the motion as untimely and unsupported by sufficient cause to permit late filing, neither of which would be immediately appealable].)

## DISCUSSION

### 1.  *The Record on Appeal Is Adequate*

Finestone contends the order denying his special motion to strike as untimely demonstrates the court misunderstood the scope of its discretion under section 425.16, subdivision (f), requiring him to establish a "compelling reason" for not having filed the motion within 60 days of service of the complaint, and erroneously concluded that seeking protection from Roth's abusive discovery tactics was not a proper purpose for filing the motion.  Before addressing the merits of these arguments, Roth asserts the order should be affirmed because Finestone failed to provide as part of the record on appeal either a reporter's transcript or an agreed or settled statement of the oral proceedings in the trial court, stating, with double emphasis, "Where, as here, the appellant is challenging a trial court order based on abuse of discretion, the appellant *must* provide a hearing transcript or suitable substitute to obtain a reversal."

Roth's argument the order should be affirmed based on an inadequate appellate record wholly ignores California Rules of Court, rule 8.120(b), which requires a reporter's transcript or agreed or settled statement on appeal only if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court . . . ."  (See also Cal. Rules of Court, rule 8.130(a)(4) [appellant may "elect[] to proceed without a reporter's transcript"].)  Finestone does not contend anything said by

6

the court or the parties during the hearing on his special motion to strike, as opposed to the court's actual ruling, is material to his argument the court abused its discretion in denying his motion as untimely.

In addition, the meager authority cited by Roth for this somewhat startling proposition, not surprisingly, fails to support his argument.  This court's decision in *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, explained we could not assess whether the trial court had abused its discretion in denying a motion under section 473, subdivision (b), to set aside an order settling a trust based on mistake or excusable neglect because the appellant had failed to provide either a copy of the court's minute order denying the motion or a transcript of the hearing.  (*Wagner*, at p. 259.)  The notice of ruling that was part of the record on appeal did not disclose the court's analysis of the motion or reason for denying it.  (*Ibid.*)  Similarly, the Eisenberg, Horvitz & Wiener practice guide cites our decision in *Wagner* for the unremarkable principle that an appellant "cannot obtain reversal of a trial court order on the basis of abuse of discretion when there is no record explaining what occurred at the underlying hearing or the trial court's reasoning."  (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2015) ¶ 4.3.1, p. 4-2.)  Neither our opinion nor the practice guide suggests a reporter's transcript is an essential component of the record on appeal when, as here, the court's reasoning is set forth in its minute order and none of the parties relies upon the oral argument before the trial court.

To be sure, Presiding Justice Turner's dissenting opinion in *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 707-709, the only other authority cited by Roth for this point, argued the section 425.16 orders then before Division Five of this court should be affirmed on the ground of an inadequate appellate record because no reporter's transcript or settled statement had been provided.  But the majority in the *Chodos* case expressly rejected that position, citing the governing rules of court and distinguishing cases where a transcript of the proceedings was truly necessary to review the trial court's decision such as *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, which

7

challenged the trial court's determination of the reasonableness of attorney fees incurred during trial. (*Chodos*, at pp. 699-700.)

Roth implicitly acknowledges the minute order indicates the grounds upon which the court declined to hear Finestone's untimely motion but speculates the trial court also "may have based its decision on other factors or arguments which took place during the hearing on the motion." That suggestion is belied by the court's express adoption in its entirety of its earlier posted tentative ruling as its final order. In any event, Finestone limits his argument on appeal to the reasoning set forth in the minute order. The record on appeal is adequate for us to review that decision for abuse of discretion.

2. *The Trial Court Acted Within Its Discretion in Denying Finestone's Motion as Untimely*

a. *Governing law*

As discussed, section 425.16, subdivision (f), requires the filing of a special motion to strike a complaint pursuant to section 425.16, subdivision (b), within 60 days of the service of the complaint "or, in the court's discretion, at any later time upon terms it deems proper." "'Discretion' refers to a zone of latitude within which a trial court's actions must be upheld on appeal." (*Hewlett-Packard, supra*, 239 Cal.App.4th at p. 1187.) "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason."'" (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339.)

"In determining whether to permit a late motion, the most important consideration is whether the filing advances the anti-SLAPP statute's purpose of examining the merits of covered lawsuits in the early stages of the proceedings. [Citations.] Other relevant factors include the length of the delay, the reasons for the late filing and any undue prejudice to the plaintiff." (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 624.) "[A] claim that a trial court abused its discretion by failing to entertain a late anti-SLAPP motion requires the appellant to demonstrate that the trial court applied the statute in a manner that is incompatible either with the statute's actual mandate, or with its 'purposes and policy.'" (*Hewlett-Packard, supra*,

8

239 Cal.App.4th at p. 1188; accord, *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 285.)[2]

Given the well-established purpose of section 425.16—to provide defendants with a special procedural device to allow the prompt evaluation and dismissal of meritless lawsuits that may chill speech and petition rights (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192; see *Hewlett-Packard, supra*, 239 Cal.App.4th at p. 1188)—it is to be expected both that the trial court will frequently deny as untimely a late-filed motion and that such an exercise of its broad discretion will be upheld on appeal. (See, e.g., *Morin v. Rosenthal* (2004) 122 Cal.App.4th 673, 679, 681 [affirming trial court's decision to deny as untimely motion filed "approximately six weeks after the 60-day period expired"].)[3] Indeed, in exercising its discretion the trial court "must be mindful that the 60-day deadline is the general rule. [Citation.] '[T]he Legislature's act in allowing an interlocutory appeal of the denial of an anti-SLAPP motion is clearly tied to the fact that the statute contemplates that most such motions will be filed within 60 days of the filing of the complaint.' [Citation.] Thus, a 'trial court must be wary about freely granting a party the right to file an anti-SLAPP motion past the 60-day deadline.'" (*San Diegans for Open Government v. Har Construction, Inc., supra,* 240 Cal.App.4th at p. 624 [reversing trial court's decision to permit late-filed motion]; see *Hewlett-Packard*, at p. 1189 [affirming trial court's decision not to permit late-filed motion; by failing to act within the 60-day time limit, "a defendant incurs costs—and

---

[2] The trial court need not consider whether the motion has any merit in determining whether to permit it to be filed and heard after the 60-day time limit. (*Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 682; *Morin v. Rosenthal* (2004) 122 Cal.App.4th 673, 681.)

[3] Finestone has cited no case, and we have found none, in which the appellate court reversed as an abuse of discretion the trial court's decision to refuse to hear or to deny as untimely a special motion to strike filed after the 60-day time limit. (See *Hewlett-Packard, supra*, 239 Cal.App.4th at p. 1190 ["we are aware of no case holding that a trial court abused its discretion by *denying* an anti-SLAPP motion, or refusing to hear it, after the 60 days had passed"].)

9

permits the plaintiff to incur costs—that a timely motion might be able to avert. As these costs accumulate in the course of conventional discovery and motion practice, the capacity of an anti-SLAPP motion to satisfy the statutory purpose diminishes"].)

      b. *The trial court properly applied its broad discretion to deny Finestone's late-filed motion*

Finestone's primary argument on appeal is that the trial court misunderstood the scope of its discretion to permit a late-filed special motion to strike, requiring him to demonstrate a "compelling reason" for his delay. Finestone misconstrues the trial court's order. Relying on language in *Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 776, which held the trial court had abused its discretion in granting defendant's application to file a late anti-SLAPP motion approximately two years after the statutory deadline,[4] the trial court here ruled, "Where there is no compelling reason for a late-filed motion, the court, in its discretion may deny such a request." That is, if a compelling justification has been presented, permission to file the motion late should normally be granted. In the absence of such a showing, however, the court has discretion to deny the motion as untimely if it believes its consideration of the motion on its merits will not further the purposes of section 425.16.

In this case, far from presenting a compelling explanation for not filing his motion in a timely manner, Finestone's counsel readily conceded he could have met the statutory deadline. The record required that concession: Finestone answered the complaint within 30 days of its service and responded to Roth's initial discovery demands within the 60-day time limit for filing a special motion to strike under section 425.16, subdivision (f). Although Finestone's counsel explained why he elected to file the motion when he did— a desire to put an end to what he viewed as abusive discovery—nothing prevented him

---

[4]     In *Platypus Wear, Inc. v. Goldberg, supra,* 166 Cal.App.4th 772, the appellate court explained defendant Goldberg had not only failed to provide a compelling explanation for his two-year delay in filing an application for leave to file a late anti-SLAPP motion, but also "did not articulate any extenuating circumstances justifying a late filing." (*Id.* at p. 776.)

from filing his motion and triggering the automatic discovery stay under section 425.16, subdivision (g), as soon as Roth first served his purportedly burdensome interrogatories, document demands, requests for admission and third-party discovery. By delaying his motion and the concomitant discovery stay for an additional six weeks, Finestone unfairly permitted Roth to continue with the steps necessary to prepare the case for a more conventional disposition, attempting to resolve discovery disputes through the meet-and-confer process and, when that was unsuccessful, preparing and filing motions to compel. Although seeking to stay discovery while permitting the court to examine the merits of a lawsuit covered by section 425.16, subdivision (b), is not, in and of itself, an improper purpose for filing a special motion to strike, the trial court acted well within its discretion in concluding Finestone's delay in doing so meant his late-filed motion could not fulfill the statutory purpose. (See *Hewlett-Packard, supra*, 239 Cal.App.4th at p. 1190 ["an anti-SLAPP motion cannot fulfill the statutory purpose, and may indeed subvert that purpose, if the parties have already incurred substantial expense preparing the case for a more conventional disposition"]; *Platypus Wear, Inc. v. Goldberg, supra,* 166 Cal.App.4th at p. 783 [one purpose of the 60-day limitation is "'to require presentation and resolution of the anti-SLAPP claim at the outset of the litigation before the parties have undertaken the expenses of litigation that begin to accrue after the pleading stage of the lawsuit'"]; see also *San Diegans for Open Government v. Har Construction, Inc., supra*, 240 Cal.App.4th at p. 624 ["[t]he statutory deadline also seeks "'to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings'""].)

      3. *Roth's Motion for Sanctions Is Denied*

Asserting Finestone's appeal unquestionably lacks any merit and was taken solely for the improper purpose of harassment and delay, Roth has moved for an award of sanctions jointly against Finestone and his counsel Epstein, requesting $69,106.07 for his attorney fees and costs in connection with the appeal. Pursuant to California Rules of Court, rule 8.276(d), we requested that Finestone and his counsel respond to the motion.

11

Section 907 provides, "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (See Cal. Rules of Court, rule 8.276(a)(1) [Court of Appeal may impose sanctions on a party or an attorney for taking a frivolous appeal or appealing solely to cause delay].) The Supreme Court in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650, set forth the applicable standard, "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit."

Although we have affirmed the order denying Finestone's special motion to strike as untimely, we cannot say, in light of the arguments presented, that the appeal was "totally and completely devoid of merit." (*In re Marriage of Flaherty, supra*, 31 Cal.3d at pp. 650-651.) Nor does evidence exist that the appeal was brought for an improper motive to harass Roth or simply to delay proceedings in the trial court. The motion for sanctions is denied.

## DISPOSITION

The order denying the special motion to strike is affirmed. Roth's motion for sanctions for frivolous appeal is denied. Roth is to recover his costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.                    BLUMENFELD, J.[*]

---

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12