Filed 1/26/21  Lee v. Park CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KYUNG HWAN LEE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>YOUNG CHUN PARK et al.,<br><br>    Defendants and Respondents. | B300015<br><br>(Los Angeles County<br>Super. Ct. No. 18STCV06972) |

APPEAL from an order of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

Henry M. Lee for Plaintiff and Appellant.

Daley & Heft, Lee H. Roistacher, Robert W. Brockman, Jr., and Kimberly A. Sullivan for Defendants and Respondents.

_____

The dispute underlying this appeal of an order granting defendants' anti-SLAPP[1] motion is a war between factions in a church and competing pastors. Plaintiff is one of those pastors. In prior litigation, defendants filed a cross-complaint accusing plaintiff of sex crimes, adultery and bribery, among other bad acts. After the trial court dismissed that cross-complaint without prejudice, plaintiff filed a slander suit against defendants who had brought the cross-complaint. Those defendants filed the anti-SLAPP motion before us asserting that their cross-complaint is within the ambit of the anti-SLAPP statute as petitioning activity in a judicial proceeding. They further argue that because the litigation privilege[2] bars plaintiff's slander claim on the merits, plaintiff cannot show a probability of succeeding on his slander claim, which probability is part of the anti-SLAPP analysis. As set forth below, we agree with defendants both as to the applicability of the anti-SLAPP statute and plaintiff's inability to show probability of success on the merits of his slander claim.

Plaintiff seeks to avoid application of the anti-SLAPP statute by relying on statements outside of the operative complaint. Because application of the anti-SLAPP statute is framed by the existing pleadings and because these purported other statements have no support in the record, plaintiff's effort fails. Finally, we reject plaintiff's argument that the trial court

---

[1] SLAPP is an acronym for " '[s]trategic lawsuit against public participation.' " (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 929, fn. 1.)

[2] Civil Code section 47, subdivision (b).

2

erred in exercising its discretion to consider defendants' late anti-SLAPP motion.

In sum, we affirm.

## BACKGROUND

This matter follows on the heels of litigation over the rightful pastor and ownership of a church. We first describe the prior litigation and then turn to the current litigation.

1. ***L.A. Dong San Church Corp., et al. v. Young Chun Park, et al. (BC654597)***

On March 22, 2017, the Los Angeles Dong San Church Corporation, The Korean Methodist Church, and The Korean Methodist Church of the Americas sued Young Chun Park, Los Angeles Dong San Church Corporation, Ki Hyung Han, Mee Young Koba, and Eric Soo Chul Kang (referred to as the Church Defendants). The plaintiffs asserted causes of action for declaratory relief, breach of fiduciary duty, accounting, and quiet title.

### a. Operative cross-complaint

In its first amended cross-complaint (referred to as the cross-complaint), filed October 5, 2017, the Church Defendants (who include defendants in the current case) alleged causes of action for negligence, intentional infliction of emotional distress, and breach of fiduciary duty.

The cross-complaint alleged that Park was the church's head minister and chief executive officer. The Church Defendants recognized that another faction of the church membership wanted to appoint Lee as head minister. According to the cross-complaint, "in or about 2000, Lee had embezzled

3

approximately USD $200,000 while he was the head of the Finance Team of a district conference of the Korean Methodist Church ('KMC') in Korea; . . . Lee spent such funds at hostess bars; . . . [Lee] was charged with committing rape including possibly gang rape of female patrons or hostesses at bars; and that Lee then resigned from his pastor position leaving KMC entirely." (Some capitalization omitted.) Lee "was known . . . as a repeat offender of sexual harassment and sex crime . . . ." The cross-complaint also alleged that the church did not want Lee as pastor.

On December 27, 2017, the trial court entered a dismissal of the cross-complaint without prejudice.[3]

### b. Operative complaint

The following allegations are from the second amended complaint. There was a rift among church members, with some supporting Young Chun Park as pastor and others supporting Kyung Hwan Lee (the plaintiff and appellant in the current case).[4] The plaintiffs accused Park "of misusing public funds, embezzling, pastoral malpractice, forging documents, and committing other faults." "Park has no authority of any kind to act as Pastor" of the church. The plaintiffs further alleged that the Church Defendants breached their fiduciary duties and embezzled money from the church. According to the operative

---

[3] The order of dismissal was included in Lee's request for judicial notice, which we granted. There is nothing in the record indicating why the trial court dismissed the cross-complaint.

[4] While the record contains various spellings of the plaintiff's name, we refer to him using the spelling indicated in his operative complaint.

complaint, the Church Defendants unlawfully encumbered church property and unlawfully sold church property.

The plaintiffs sought several declarations from the trial court in the operative pleading, including that Park's actions as a pastor were void. The plaintiffs alleged that "[t]here is an immediate threat of substantial irreparable harm to the church and its members because having two Pastors attempting to hold services at the same time shall cause significant and irreparable harm . . . . And there is substantial and immediate risk that [the Church] Defendants shall encumber, sell and transfer all or part of the church's real property . . . ." (Some capitalization omitted.) The plaintiffs sought an accounting of all church finances. The plaintiffs also sought to quiet title as to all church property.

### c. Judgment

On September 5, 2018, the trial court entered a judgment quieting title and granting declaratory relief, including a declaration that the Church Defendants had no right to title or interest in the assets of the church. The trial court ordered that the Church Defendants "return to Pastor Lee on behalf of Dong San . . . any and all Dong San property in their possession or which is able to be acquired or reacquired by them if now deposited with another, including but not limited to all assets . . . ." The trial court further found "non-withdrawing" church members had determined that Pastor Lee (appellant in the current litigation) was the pastor of the church. The trial court found it was bound by that determination.

### 2. *Lee's pleadings in the current litigation*

On December 3, 2018, Lee sued Park, Koba, and Kang (referred to as defendants) for slander, intentional infliction of

5

emotional distress, and negligence. Lee served defendants on or before February 12, 2019.

On March 25, 2019, Lee filed a first amended complaint, also alleging causes of action for slander, intentional infliction of emotional distress, and negligence. In his first amended complaint, Lee alleged "on or about October 5, 2017, [the date the Church Defendants filed their cross-complaint in the prior litigation] and continuing thereafter to the present, with additional slanderous statements being added" defendants Park, Koba, and Kang made the following slanderous statements:

"A. That Plaintiff had committed multiple acts of adultery, and engaged in the criminal acts to solicit and pay for prostitutes;

"B. That Plaintiff had committed multiple criminals [*sic*] acts to sexually harass, batter, assault females/prostitutes in an illegal brothel while drunk;

"C. That Plaintiff had committed multiple criminal acts of embezzlement of church funds;

"D. That Plaintiff had bribed, extorted, and/or engaged in criminal behavior to obtain his position as a pastor;

"E. That Plaintiff was conspiring to steal Church assets, to sell Church properties, and to personally profit from the sales of Church assets."

Lee further alleged that defendants acted with "malice, oppression and fraud" to prevent Lee from becoming the senior pastor at the Los Angeles Dong San Church. Lee's causes of action for intentional infliction of emotional distress and negligence were based on the identical allegedly false and slanderous statements.

6

### 3.     *Defendants' anti-SLAPP motion*

On May 10, 2019, defendants filed an anti-SLAPP motion. Defendants argued that Lee's claims were premised on the October 5, 2017 cross-complaint filed in the previous lawsuit. Defendants further argued "plaintiff specifically seeks redress for claims set forth by Koba, Park, and Kang in their cross-complaint filed on October 5, 2017 in the prior action." According to defendants, the filing of the cross-complaint fell within the ambit of the anti-SLAPP statute because it was based on their petitioning and speech activities.

Defendants also contended that Lee could not show a probability of prevailing because the litigation privilege in Civil Code section 47 constituted a complete defense. Defendants asserted: "The litigation privilege undoubtedly applies because the communications plaintiff complains of in this litigation were made by defendants in the prior action via their cross-complaint."

Defendants acknowledged that they filed the anti-SLAPP motion past the 60-day deadline in Code of Civil Procedure section 425.16, subdivision (f), but argued that the trial court should, in its discretion, permit its filing.[5] Defendants explained that "[a]lthough this motion was not filed within 60 days of service of the complaint, it was filed within 60 days of defense counsel of record substituting into the litigation." Defendants argued that their anti-SLAPP motion satisfied the purpose of the anti-SLAPP statute to dispose of meritless lawsuits

---

[5] Code of Civil Procedure section 425.16, subdivision (f) provides in pertinent part: "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper."

7

expeditiously. Defendants also sought their attorney fees and costs.

### 4. *Lee's opposition to the anti-SLAPP motion*

Lee moved ex parte to continue the hearing on the anti-SLAPP motion for 22 days and to grant Lee additional time to file an opposition. In his ex parte motion for an extension of time, Lee's counsel stated that he "was unaware of the existence of Defendants' Motion due to an assistant's calendaring mistake." The trial court granted Lee's motion.

In his opposition to the anti-SLAPP motion, Lee challenged the timeliness of defendants' anti-SLAPP motion, arguing that it was 27 days too late.

In his opposition, Lee stated that "the origin and communication of the slanderous remarks occurred outside the cross complaint and papers generated in the Prior Lawsuit . . . ." Lee further stated "there exists numerous witnesses that can confirm that the origin of the defamatory remarks and the repeating of those remarks occurred outside the Prior Lawsuit and were discussed with non-parties, non-litigants, without attorneys present, in private settings including telephone calls, private facilities and Church facilities." Lee argued he could demonstrate a probability of prevailing on the merits. According to Lee, he "has identified witnesses and documents that support his claim of the ongoing defamation against Defendants and will be likely to prevail on his claims at trial." Lee did not cite to evidence of any such witnesses or documents.

Lee did attach a declaration to his opposition. Lee averred he held the title of senior pastor. Lee stated his lawsuit was based on statements that "originated from outside the Prior Lawsuit and were communicated outside the Cross Complaint

8

[that] was filed in that case." Lee referenced conversations with Park Tae-Seok, Young Sook Yang, Man Soon Baek, Young Min Kim, and Bishop Eun Higon. Lee identified *no* conversation with, or statement made by, any defendant in this case. In his declaration, Lee also averred that Sungil Choi wrote a letter stating, "I have heard and know of your past so quit your hopeless dreams and serve the church you were serving." Lee attached a copy of a letter written by Sungil Choi in Korean without an English translation.

### 5. *Defendants' reply*

In their reply, defendants attached an English translation of Choi's letter dated February 13, 2017. Choi stated: "I know your past since I already heard about your past to a certain extent so you should serve the church you are serving currently without having any false expectation." Choi also stated "you or Bishop Park should understand that we have been already preparing a legal case for the things you and he caused by coming to our church."

### 6. *The trial court granted defendants' anti-SLAPP motion*

After a hearing, the trial court granted defendants' anti-SLAPP motion. The trial court found that the lawsuit arose from the cross-complaint filed on October 5, 2017 in prior litigation. The court awarded defendants attorney fees in the amount of $5,883 and costs in the amount of $149.

Lee timely appealed.

9

## DISCUSSION

Under Code of Civil Procedure[6] section 425.16, known as the anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "The Legislature enacted section 425.16 to prevent and deter 'lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' (§ 425.16, subd. (a).) Because these meritless lawsuits seek to deplete 'the defendant's energy' and drain 'his or her resources' [citation], the Legislature sought ' "to prevent SLAPPs by ending them early and without great cost to the SLAPP target" ' [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)

" 'Section 425.16, subdivision (b)(1) requires the trial court to engage in a two-step process when determining whether to grant a motion to strike. First, it decides whether defendant has made a prima facie showing that the acts of which plaintiff complains were taken in furtherance of defendant's constitutional

---

[6] Undesignated statutory citations are to the Code of Civil Procedure.

10

rights of petition or free speech in connection with a public issue. If defendant satisfies this threshold burden, plaintiff must then demonstrate a reasonable probability of prevailing on the merits. On appeal, we review these legal issues de novo.' " (*Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1047.) In evaluating an anti-SLAPP motion, we may consider the parties' pleadings as well as affidavits describing the basis for liability. (*Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1104 (*Symmonds*).)

Section 425.16, subdivision (e) defines, in pertinent part, an act in furtherance of speech or petition rights to "include[ ]: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, . . . or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Section 425.16 requires that courts construe the anti-SLAPP statute broadly. (*Symmonds*, *supra*, 31 Cal.App.5th at p. 1103.)

We may limit our review to Lee's cause of action for slander because on appeal, Lee does not challenge the portion of the trial court's order striking his causes of action for intentional infliction of emotional distress and negligence. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 (*Tiernan*) [argument not raised on appeal is forfeited].) Lee acknowledges "[a]ll causes of action are based on the same statements constituting slander."

11

1. **Defendants Made a Prima Facie Showing that the Allegations In the Complaint Fall Within the Ambit of Section 425.16**

Lee argues that he is "not suing based on the written false statements contained in the Cross Complaint." Lee does not challenge that the anti-SLAPP statute would apply if the allegations in his operative complaint were based on the cross-complaint in the earlier litigation. Instead, Lee argues "the lower court ignored the evidence before it that reflected the slanderous verbal remarks originated before the 10/5/2017 cross complaint was even filed, and disseminated outside of the litigation to non-litigant third parties." Lee also asserts that slanderous statements about him "were disseminated" orally in January 2017 and in a letter in February 2017 prior to the filing of the cross-complaint in October 2017. According to Lee the "slanderous oral statements were communicated outside of the cross complaint, to non-party litigants, and had no relation to the cross complaint other than they were repeated in the cross complaint. Thus, the first step of the SLAPP analysis was never satisfied."

Lee's argument lacks merit for two independent reasons. First, anti-SLAPP jurisprudence required the trial court to assess the allegations in the complaint, and not base its ruling on unpleaded claims. Second, the record does not support Lee's assertion that defendants disseminated slanderous remarks about Lee prior to their filing the cross-complaint.

12

### a. The trial court properly relied on the allegations in Lee's complaint, and not unpleaded purported prior slander

"[T]he pleading . . . provides the outer boundaries of the issues that are to be addressed in an anti-SLAPP motion . . . ." (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 889). The trial court thus properly based its analysis on the allegations in Lee's operative complaint. There is no merit to Lee's argument that the trial court should have instead relied on unalleged "slanderous verbal remarks originated before the 10/5/2017 cross complaint was even filed . . . ." To do otherwise would, in effect, allow an oral amendment of the operative complaint in derogation of the very purpose of the anti-SLAPP statute. (*Medical Marijuana, Inc.*, at p. 898.) " 'Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading. This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend. [¶] By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent. [Citation.] Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources. [Citation.] This would totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing such suits. [Citation.]' " (*Ibid.*)

### b. Lee presented no evidence that defendants disseminated slanderous statements prior to filing their cross-complaint

Lee admitted that in discovery he asserted "the only documents reflecting the oral slander was the Cross Complaint." Lee argues he presented evidence that defendants made slanderous statements prior to filing their cross-complaint in the earlier litigation. The record does not support Lee's assertion.

Although Lee asserts that slanderous statements about him "were disseminated" orally in January 2017 and in a letter in February 2017, the record contains *no* allegation or evidence that any defendant in this case made slanderous remarks in January and February 2017. Although in his declaration Lee refers to conversations with, and a letter from persons other than defendants, he identifies *no* slanderous statement by a defendant in the current litigation.

### c. Defendants' allegedly slanderous statements made in their cross-complaint fall within the ambit of the anti-SLAPP statute

The allegations in the operative complaint fall within the ambit of the anti-SLAPP statute because they constitute "written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e)(2).) Lee does not argue otherwise.

Lee's remaining arguments are not a model of clarity. Although Lee references the "public interest," he fails to explain the relevance of determining whether defendants' statements in the cross-complaint were in the public interest. "[S]tatements,

14

writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest." (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35 (*Rohde*).)  To the extent Lee is attempting to argue that the allegations in the cross-complaint were unrelated to the underlying litigation, the argument lacks merit.  The underlying litigation involved whether Lee was the pastor of the church and whether Lee had control over the church's assets.  Defendants' allegedly slanderous statements concerned Lee's lack of qualification to be pastor and to be in charge of the church assets.

## 2. Lee Demonstrates No Probability of Prevailing

If a defendant demonstrates that the plaintiff's claim arises from protected activity under section 425.16, the burden shifts to the plaintiff to " 'demonstrate the merit of the claim by establishing a probability of success.' " (*Symmonds*, *supra*, 31 Cal.App.5th at p. 1103.)  Here, defendants argue that Lee cannot demonstrate a probability of prevailing because the litigation privilege bars Lee's claims.  "While defendants bear the burden of proof on any affirmative defense, [the plaintiff] retains the burden to show, under the second step of the anti-SLAPP analysis, that he has a probability of prevailing on the merits of the claim. (*Laker v. Board of Trustees* (2019) 32 Cal.App.5th 745, 769.)

"The litigation privilege is codified in Civil Code section 47 (section 47):  '[a] privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding . . . .'  (§ 47, subd. (b).)" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)  The litigation privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the

15

litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' . . . It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen*, at p. 1057.)

The litigation privilege " 'immuniz[es] participants from liability for torts arising from communications made during judicial proceedings' " except for a claim of malicious prosecution. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322; see also *Kettler v. Gould* (2018) 22 Cal.App.5th 593, 607 ["The litigation privilege 'precludes liability arising from a publication or broadcast made in a judicial proceeding or other official proceeding.' "].) The litigation privilege also shields statements made in anticipation of litigation. (*Rohde*, *supra*, 154 Cal.App.4th at p. 35.)

Defendants argue that the litigation privilege is a complete defense and prevents Lee from showing a probability of prevailing. We agree.

Here, litigants allegedly made the slanderous statements in a judicial proceeding to achieve the objects of that litigation—statements that had an obvious connection to achieving the goals of that litigation. As set forth in the Background, defendants alleged in the cross-complaint that Lee committed a series of sexual crimes and harassment, financial crimes, and other corrupt acts. As also set forth in the Background, the cross-complaint was a weapon in a war for control of a Korean church

16

forged in the courts. The same or similar accusations in the cross-complaint are the subject of Lee's slander claims in the case before us. Thus, the litigation privilege immunizes defendants from plaintiff's slander claim.

Further, as we have explained earlier, Lee's reliance on his declaration for unalleged slanderous remarks is misplaced. Even assuming arguendo the truth of all of the statements in Lee's declaration, there is *no* support in the record for Lee's assertion that any defendant (Park, Koba, or Kang) made slanderous statements outside of the cross-complaint.

### 3. The Trial Court Acted Within Its Discretion in Allowing Defendants to file an anti-SLAPP motion 27 days after the 60-day deadline

On appeal, Lee argues that the anti-SLAPP motion filed 87 days after the last defendant was served with the original complaint was untimely.[7] We review the trial court's ruling on an application to file a late anti-SLAPP motion for abuse of discretion. (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 782.) We conclude that the trial court did not abuse its discretion in granting that application.[8]

---

[7] Although defendants argue that they filed their motion within 80 days of service of the last defendant, the seven-day difference is immaterial.

[8] We agree with defendants that Lee has forfeited the timeliness issue by failing to identify any alleged abuse of discretion. (*Tiernan, supra,* 33 Cal.3d at p. 216, fn. 4 [argument not raised on appeal is forfeited].) Lee simply repeats the same arguments he made in the trial court without considering our standard of review. He neither argues nor shows that the trial

An anti-SLAPP motion must be filed within 60 days of service of the complaint or at any later time the court deems proper. (See fn. 4, *ante*; *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 639.) "The purpose of the time limitation is to permit ' "the defendant to test the foundation of the plaintiff's action before having to 'devote its time, energy and resources to combating' a 'meritless' lawsuit. . . ." ' [Citation.] The statutory deadline also seeks ' "to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings." ' " (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 624.) For example, a trial court acts within its discretion in denying defendant the opportunity to file an anti-SLAPP motion two years after the original complaint when it was "far too late for the anti-SLAPP statute to fulfill its purpose of resolving the case promptly and inexpensively." (*Newport Harbor, supra*, 4 Cal.5th at p. 645.)

The trial court did not abuse its discretion in considering defendants' anti-SLAPP motion, filed 87 days after service on the last defendant. Defendants' counsel represented that defendants filed the motion within 60 days of counsel substituting into the litigation. More significantly, no appreciable litigation activity occurred during that 27-day period. Nor did the 27-day delay undermine the anti-SLAPP statute's purpose of resolving the case promptly and inexpensively. Lee's timeliness argument rings somewhat falsely in light of his own request for a 22-day extension because of his calendaring mistake. Lee neither argues nor shows that he suffered any prejudice from the late motion, let

---

court abused its discretion. We, however, choose to consider the issue on the merits.

alone that the relatively brief delay here is comparable to the two-year delay in *Newport Harbor*.

## DISPOSITION

The order granting defendants' anti-SLAPP motion is affirmed.  Young Chun Park, Mee Young Koba, and Eric Soo Chul Kang are awarded their costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



FEDERMAN, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.