Filed 6/12/25

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SIMON MORA,<br><br>    Plaintiff, Cross-defendant and<br>    Appellant,<br><br>v.<br><br>DOUGLAS MENJIVAR et al.,<br><br>    Defendants, Cross-complainants<br>    and Respondents. | A169997<br><br>(Contra Costa County<br>Super. Ct. No. MSL21-02451) |

Plaintiff Simon Mora appeals a trial court order denying his special motion to strike the cross-complaint of defendants Douglas Menjivar and Consuelo Emidey Menjivar Campos on timeliness grounds. (See Code Civ. Proc.,[1] § 425.16; the anti-SLAPP[2] statute.) Mora further appeals the court's denial of his concomitant motion for sanctions. We affirm.

## I. BACKGROUND

### A. *The Insurance Dispute*

The parties' initial dispute arose from a motor vehicle accident in which Mora's daughter, who was driving Mora's vehicle, crashed into Menjivar as

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.C.

[1] All statutory references are to the Code of Civil Procedure.

[2] " 'SLAPP' is an acronym for 'strategic lawsuit against public participation.' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381, fn. 1.)

he allegedly ran a red light.  Menjivar's automobile insurer, Allstate Insurance (Allstate), accepted liability and directed Mora to take his vehicle to a body shop for repairs.  MAACO Body Shop (MAACO) was selected and Allstate wrote a check for $10,511.74, based on repair estimates.[3]  The check named MAACO and Mora as payees, but Allstate sent the check to MAACO.

Someone other than Mora endorsed the check and cashed it.  Mora alleged that MAACO did not conduct any repairs to his vehicle and therefore requested direct compensation from Allstate, which Allstate refused.  Mora filed suit, alleging property damage and naming Menjivar and Campos as defendants with the understanding that "a plaintiff in a car accident cannot sue the defendant's insurer directly, but must instead sue the responsible party defendant."[4]

In a motion for leave to file an amended answer, defendants characterized Mora's claim as "settled" because the check had been cashed.  They also asserted several affirmative defenses based on Mora's refusal to sign a release and to file a dismissal of his complaint "after the funds were delivered to his attention (via his attorney)."  Defendants further requested leave of the court to file a cross-complaint, reiterating that Mora's "property damage claim was settled" because he "was given two checks."  The trial court granted both requests.

## B.    *The Underlying Cross-complaint and Special Motion*

By May 26, 2023, defendants served a cross-complaint against Mora for indemnity, declaratory relief, and contribution.  In sum, defendants (as cross-complainants) contended Mora "was negligent or otherwise liable so as to

---

[3] Allstate issued several checks, but only the first is the subject of this dispute.

[4] Mora's daughter also alleged personal injury claims not at issue here.

proximately cause the injuries and damages" that were alleged in the complaint. Accordingly, they sought "indemnity in an amount equal to [Mora's] comparative fault," "costs" for defending against the complaint, and a declaration regarding Mora's "duty to indemnify."

On July 18, 2023, Mora filed and served a document titled "Notice of Special Motion to Strike and Special Motion to Strike Complaint" (the special motion). The special motion combined both the notice of motion and the motion itself.

Although it left the hearing date blank, the special motion stated that "Mora shall move to strike the cross-complaint . . . under California's anti-SLAPP statute [citation] and shall move for attorney's fees thereafter . . . on the . . . grounds" that "1. The cross-complaint, in its entirety, arises in relation to Simon Mora's valid exercise of freedom of speech and petition for redress, and the cross-complainants cannot establish a probability of success; and [¶] 2. A prevailing anti-SLAPP motion filer is entitled to attorney's fees as a matter of law . . . ." It concluded by stating the "[special] motion shall be based on the accompanying Memorandum of Points and Authorities, all related pleadings and exhibits, the record before this Court, and oral argument as may be presented at the hearing."

It was not until August 22, 2023 that Mora filed the memorandum of points and authorities in support of the special motion (supporting memorandum) along with his attorney's declaration attaching relevant exhibits, such as an e-mail from Allstate and the cross-complaint. The proof of service—which re-served the notice of motion and motion in addition to serving the supporting memorandum and attorney declaration—was also dated August 22, 2023.

The captions on the supporting memorandum and the proof of service each noted that the hearing date was scheduled for September 18, 2023. The record is silent as to how the hearing was scheduled and why it was scheduled for that date.

Defendants filed their opposition on September 6, arguing, in part, that the special motion was procedurally defective. Specifically, defendants contended that Mora missed the deadline to file an anti-SLAPP motion within 60 days of service of the cross-complaint and therefore the special motion was untimely.

In reply, Mora asserted that the trial court never granted defendants leave to file the cross-complaint, and it was only out of "an abundance of caution" that he filed the special motion at all. Mora further alleged that service of the cross-complaint was defective because defendants served the cross-complaint by electronic mail without a stipulation. Mora concluded that such legal defects precluded defendants from "establish[ing] that Mr. Mora filed an untimely anti-SLAPP motion."

The trial court heard argument on the special motion and ordered supplemental briefing on the timeliness issue.[5]

## C. *The Sanctions Motion and Supplemental Briefing*

In addition to the requested supplemental briefing, Mora filed a motion for sanctions pursuant to section 128.7 (sanctions motion). Mora filed the sanctions motion "[i]n the event that the Court finds any procedural impediments to dispensing of the meritless SLAPP cross-complaint."

---

[5] We lack the benefit of a record of oral proceedings because Mora designated the record on appeal without a reporter's transcript, and therefore any claimed error must appear on the face of the written record. (See Cal. Rules of Court, rules 8.124(b)(3)(B), 8.163.)

Mora characterized his complaint as arising from Allstate's "negligent act" of sending "a check to a fly-by-night body shop that, according to Allstate, took the money then closed the shop and absconded with it." Accordingly, because "Allstate, through the defendant, is suing Mr. Mora for its own negligent act," Mora contended "[t]he cross-complaint [was] brought for the improper purpose of trying to frighten and intimidate Simon Mora into dismissing his lawsuit, and to increase the costs of litigation." Mora also argued the cross-claims were legally frivolous because "[o]ne cannot seek indemnification for its own negligence," and he further accused "Menjivar and Campos, through Allstate's counsels" of misrepresenting to the court that Mora had received the check.

In his subsequently filed supplemental briefing in support of the special motion, Mora directed significant attention to the sanctions motion. In particular, he argued that, by failing to "withdraw the highly sanctionable and dishonest cross-complaint" within the 21-day safe harbor window under section 128.7, "Allstate and its counsels [were] perpetrating a fraud upon [the] Court."

Regarding the timeliness of the special motion, Mora explained he waited to file his supporting memorandum until the clerk of the court had set the hearing date, and he argued this met "the intent of the Legislature." In his view, California Rules of Court,[6] "rule 3.1112(a)(3) explains that a motion is not the same thing as a memorandum in support of the motion" and "[t]he anti-SLAPP statute requires only that the 'motion' itself be filed within 60 days." Considering the supporting memorandum as distinct from the motion, Mora reasoned that the filing deadline for such "supporting documents" was "16 court days before the hearing" as set forth by section 1005,

---

[6] Undesignated references to rules are to the California Rules of Court.

5

subdivision (b). Because the anti-SLAPP statute directs "the Clerk of the Court to set the hearing so that it takes place not[] more than '30 days after the service of the motion,' " Mora asserted that the hearing could not be set until he filed the notice of motion and motion. He concluded that the filing of a supporting memorandum "makes no difference as to the setting of the hearing date, and the hearing therefore takes place in the expeditious time frame that the legislature intended." Mora also noted that the court enjoyed discretion to permit a filing beyond the anti-SLAPP statute's 60-day deadline.

In their supplemental briefing regarding the special motion, defendants focused on rule 3.1112(a), which provides that "[a] memorandum in support of the motion" is one of the " 'required papers' " to be filed in support of a motion unless otherwise provided.[7] Defendants reasoned that the special motion was "defective" because Mora failed to "include a memorandum of points and authorities in his initial 'motion.' " Defendants further relied on rule 3.1113(b) and (a), which lay out the requirements for a memorandum of points and authorities and permit a court to " 'construe the absence of a memorandum as an admission that the motion's not meritorious and cause for its denial,' " respectively.

In a separate opposition to the sanctions motion, defendants denied that they filed the cross-complaint for an improper purpose and asserted that Mora lacked any evidentiary basis for such an accusation. However, defendants admitted that Allstate sent the funds "directly to Maaco Body Shop, not to [Mora's] attorney," and they therefore promised to correct the statement of facts.

---

[7] Defendants declined to address the sanctions motion in their supplemental brief because the court requested "supplemental briefing solely as to the issue regarding the requirements to comply with filing a proper motion with the Court."

## D. *The Trial Court's Order Denying Both Motions*

The trial court held another hearing and issued a written order considering both motions.

First, the trial court adopted defendants' argument that Mora's filings "did not comport with California Rules of the Court, Rules 3.1112(a) and 3.1113(a)" and that he therefore missed the anti-SLAPP statute's 60-day deadline. Moreover, the court declined to "exercise its discretion to consider the late-filed motion" due to its concern "that the nature of the filings and their timeline were done in a manner that deliberately negated the statutory timeframes." As it explained, Mora's supplemental briefing "provide[d] no compelling additional statutory or case authority excusing the dilatory nature of the special motion to strike and its deficiencies when filed on July 18, 2023."

Turning to the sanctions motion, the trial court stated it had reviewed "the totality of the circumstances" and considered the motion "[a]gainst the entirety of the factual and legal backdrop." It specifically observed that defendants "necessarily clarified" the check was " 'sent directly to [MAACO], not to [Mora's] attorney.' " The court did not find that "defense counsel [was] filing or advocating groundless claims in the present lawsuit."

The trial court denied both motions and awarded no attorney fees or sanctions. Mora appeals.[8]

---

[8] Following our initial review, we requested supplemental briefing on the following questions: "Do Code of Civil Procedure sections 1005.5 and/or 1010 inform what papers constitute '[t]he special motion' for purposes of the filing deadline under Code of Civil Procedure section 425.16, subdivision (f)? If so, how do they congruently operate with Code of Civil Procedure section 1005, subdivision (b)? And does California Rules of Court, rule 3.1112(a) conflict with any of these statutes?"

## II.  DISCUSSION

We review the trial court's decision to deny an anti-SLAPP motion de novo.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)  Moreover, the parties' dispute over the anti-SLAPP statute's deadline presents a question of statutory interpretation we likewise review de novo.  (*Reznitskiy v. County of Marin* (2022) 79 Cal.App.5th 1016, 1025 (*Reznitskiy*).)  " 'Our primary task "in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.]  We consider first the words of a statute, as the most reliable indicator of legislative intent." '  [Citation.]  'We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation]. . . . "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." ' "  (*Ibid.*)  But if the statutory language is open to more than one reasonable interpretation, then "we ' " 'may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes.' " ' "  (*Ibid.*)  We will " 'decline[] to follow the plain meaning of a statute only when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results.' "  (*Atlantic Richfield Co. v. Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 726.)

Separately, "[w]e review a section 128.7 sanctions order under an abuse of discretion standard and therefore presume the trial court's order is correct and do not substitute our judgment for that of the trial court."  (*McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1205 (*McCluskey*).)

8

***A.*** ***The Trial Court Did Not Err In Holding Mora's Special Motion Was Untimely***

There is no dispute that the 60-day clock for Mora to file a "special motion" pursuant to the anti-SLAPP statute started ticking no later than May 26, 2023, after defendants served the cross-complaint. (§ 425.16, subd. (f).) Here, the parties dispute when a memorandum in support of an anti-SLAPP motion must be filed for the special motion to be considered timely. Mora relies on section 1005, subdivision (b), which provides, in part, that "moving and supporting papers shall be served and filed at least 16 court days before the hearing." Defendants counter that the anti-SLAPP statute's filing deadline must be read strictly and that failure to include a timely supporting memorandum constitutes a procedural defect under rule 3.1112(a).

The issue before us, then, is whether a supporting memorandum is a necessary constituent part of a "special motion" for purposes of the statutory deadline. We hold it is.

**1.** **Section 1005's Deadline for Moving and Supporting Papers Does Not Apply When a Statute Provides an Express Deadline**

We first provide some broader statutory context. A motion is "[a]n application for an order." (§ 1003.) Historically, such an application for an order "was made only upon oral presentation of a request to the court." (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 341.) But section 1005.5 displaced that former rule. (*Arambula*, at p. 341.) Now, "[a] motion upon all grounds stated in the written notice thereof is deemed to have been made and to be pending before the court for all purposes, upon the due service and filing of the notice of motion . . . ." (§ 1005.5.) While the service and filing of a notice of motion may mark the date by which the "motion" is made under section 1005.5, this language still implies the

9

documents are distinct.  (See also § 1010 ["the notice of a motion . . . must state when, and the grounds upon which it will be made, and the papers, if any, upon which it is to be based"].)

The California Rules of Court explain the components of a motion. Specifically, rule 3.1112(a) requires that "the papers filed in support of a motion must consist of at least the following: [¶] (1) A notice of hearing on the motion; [¶] (2) The motion itself; [¶] (3) A memorandum in support of the motion or demurrer."  The rule does *not* require that the papers be separate documents so long as "the party filing a combined pleading specifies these items separately in the caption of the combined pleading."  (Rule 3.1112(c).) But failure to file a supporting memorandum—either as a separate filing or combined with the motion—may be construed "as an admission that the motion . . . is not meritorious and cause for its denial."  (Rule 3.1113(a).)  The rules are silent as to when a separately filed supporting memorandum must be filed.

Section 1005, subdivision (b) provides a default deadline for filing motion papers.  The provision states, "Unless otherwise ordered or specifically provided by law, all moving and supporting papers shall be served and filed at least 16 court days before the hearing."  (§ 1005, subd. (b).)

In sum, this statutory architecture provides that the date upon which a movant files and serves a written notice of motion marks the date when the motion will be "deemed" made (§ 1005.5), but the motion is not necessarily complete at that date until all papers required for a motion are filed (rules 3.1112(a), 3.1113(a)), and where a supporting memorandum is filed separately, it is due 16 court days prior to the hearing absent a more specific deadline provided by a statute or court order (§ 1005, subd. (b)).

10

**B.** ***The Anti-SLAPP Statute Contemplates All Necessary Papers Will Be Filed Within Subdivision (f)'s Deadline***

The anti-SLAPP statute creates a 60-day window of time for filing "[t]he special motion," though the trial court may exercise its discretion to allow a motion that is filed "at any later time upon terms it deems proper." (§ 425.16, subd. (f), hereafter subdivision (f).) Considering the statutory deadline's purpose and the statutory framework as a whole, we conclude the most reasonable construction of the "special motion" for purposes of the statutory deadline is inclusive of the motion's supporting memorandum, whether filed separately or in a combined pleading. Accordingly, we hold that, where the movant files a memorandum in support of a special motion to strike separate from the motion itself, the special motion to strike is not procedurally complete and therefore is untimely unless the supporting memorandum is also filed within the statutory deadline.

The anti-SLAPP statute clearly displaces the deadline under section 1005 for serving and filing "all moving . . . papers." (§ 1005, subd. (b).) Subdivision (f) provides in full: "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing." (§ 425.16, subd. (f).) For purposes of the statute, " 'complaint' includes 'cross-complaint' and 'petition,' 'plaintiff' includes 'cross-complainant' and 'petitioner,' and 'defendant' includes 'cross-defendant' and 'respondent.' " (*Id.*, subd. (h).)

But neither section 1005 nor the anti-SLAPP statute expressly states whether a supporting memorandum constitutes a moving paper or is a constituent part of "[t]he special motion." This statutory silence makes it

11

ambiguous as to how the anti-SLAPP statute applies to a separately filed memorandum in support of a special motion to strike filed outside of subdivision (f)'s 60-day deadline. We resolve this ambiguity by examining the statutory framework as a whole and the statute's purpose. (*Reznitskiy*, *supra*, 79 Cal.App.5th at p. 1025.)

The Legislature designed the anti-SLAPP statute to combat the chilling of free speech and petition rights through abuse of the judicial process. (§ 425.16, subd. (a).) Its purpose to prevent and resolve abusive lawsuits is "reflected in the statute's short time frame for anti-SLAPP filings and hearings (§ 425.16, subd. (f)) and provision for a stay of discovery (*id.*, subd. (g))." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 65.) But the statute's " 'substantive and procedural limitations' " not only protect the targets of abusive lawsuits; they also " 'protect plaintiffs against overbroad application of the anti-SLAPP mechanism.' " (*Equilon*, at p. 65.) Specifically, "[t]he statutory [60-day] deadline also seeks ' "to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings." ' " (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 624 (*Har*).) In other words, a purpose of the statutory deadline is to limit an anti-SLAPP motion's delay to the underlying lawsuit. (See *Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 287 ["There are two potential purposes of the 60-day limitation" including "to avoid tactical manipulation of the stays that attend anti-SLAPP proceedings"].) Hence, the 60-day filing deadline checks the " 'prejudice' " to the opposing party "which attends having to suffer [expenses fighting the anti-SLAPP motion] or be subjected to such a [discovery] stay." (*Ibid.*)

The requirement that the clerk of the court schedule a hearing within a 30-day time frame (§ 425.16, subd. (f)) works to the same end. (*Har*, *supra*,

12

240 Cal.App.4th at p. 624.) Indeed, the statutory directive is that the motion hearing should be scheduled *not more than* 30 days after service of the motion. In this fashion, the Legislature enabled prompt consideration of anti-SLAPP motions.

Mora's view that section 1005, subdivision (b), applies and therefore the court clerk's setting of a hearing date controls the deadline for submitting the memorandum in support of an anti-SLAPP motion is at odds with the anti-SLAPP statute's design. Under that approach, neither the trial court nor the non-movant may be able to analyze the motion's scope or merits until 16 court days before the scheduled hearing, when—as occurred in this case—a flood of papers finally identifies the moving party's position.[9] Indeed, in the absence of a supporting memorandum, it may be unclear what claims are being targeted by the motion. (See, e.g., *Baral v. Schnitt, supra*, 1 Cal.5th at p. 382 [holding an anti-SLAPP motion may target allegations of protected activity without defeating a cause of action or reaching claims arising from unprotected activity].) This would frustrate the statutory deadline's purpose to facilitate expeditious resolution of anti-SLAPP proceedings.

Relatedly, such a rule would also impede the opposing party's ability to request limited discovery from the court pursuant to subdivision (g), especially where the court's docket requires the hearing to be scheduled outside the 30-day deadline. (§ 425.16, subd. (g) [after a noticed motion, the court "may order that specified discovery be conducted" despite the stay of discovery proceedings triggered by the filing of the anti-SLAPP special

---

[9] We observe Mora waited to file a lengthy attorney declaration and attachments until the same date that he filed his supporting memorandum. Here, however, we hold only that the late filing of the supporting memorandum made the special motion untimely for purposes of subdivision (f).

motion].)  In the absence of a supporting memorandum, the opposing party would lack sufficient information about the claims that the special motion challenged and therefore would be unable to know whether and what limited discovery may be appropriate to seek.  Thus, a construction of the anti-SLAPP statute tying the filing of a memorandum to a hearing date would therefore invite the mischief of " ' "tactical manipulation of the stays that attend anti-SLAPP proceedings" ' " the law seeks to avoid.  (*Har, supra*, 240 Cal.App.4th at p. 624; *Olsen v. Harbison, supra*, 134 Cal.App.4th at p. 287.)

Because the Legislative intent and statutory framework of the anti-SLAPP statute lead us to conclude the "special motion" for purposes of the statutory deadline is inclusive of the motion's supporting memorandum, Mora's reliance on section 1005, subdivision (b) is unavailing.  The latter statute only permits "all moving and supporting papers" to be served and filed at least 16 court days before the hearing "[u]nless otherwise ordered or specifically provided by law."  (§ 1005, subd. (b).)  This limitation to the section 1005, subdivision (b)'s applicability yields to statutes that operate under specified statutory deadlines.  (*Ibid*.)  Thus, as applied here, the provision's own terms dictate that subdivision (f) controls.  (See also *Edais v. Superior Court* (2023) 87 Cal.App.5th 530, 542 ["a canon of statutory construction instructs that, where statutes conflict, ' " 'more specific provisions take precedence over more general ones' " ' "].)  And Mora's further argument that the local practice in his jurisdiction follows section 1005, subdivision (b), cannot excuse compliance with applicable statutory deadlines.

Mora's other contentions are unpersuasive.  We agree, for example, that rule 3.1112(a) does not require that the supporting memorandum be

filed simultaneously with a motion's other required papers. But the point is a nonsequitur. We do not hold that a supporting memorandum must be filed simultaneously with the notice of motion or special motion itself. We merely hold that a memorandum in support of an anti-SLAPP motion—which Mora does not dispute is required under rules 3.1112(a) and 3.1113(a)—must be filed within the anti-SLAPP statute's statutory deadline for the special motion to be complete and therefore timely pursuant to subdivision (f). Pursuant to rule 3.1112(c), the movant still may file the notice of motion, the motion itself, and the supporting memorandum "as separate documents or combined in one or more documents if the party filing a combined pleading specifies these items separately in the caption of the combined pleading."

In sum, we construe subdivision (f), to require the memorandum in support of a special motion to strike to be filed within the 60-day time frame for the motion to be considered timely. Accordingly, the trial court did not err in ruling Mora's special motion to be untimely.[10]

## C. *The Trial Court Did Not Abuse Its Discretion In Denying the Sanctions Motion*

Mora argues defendants failed to cure a factually inaccurate assertion in their pleadings or withdraw the cross-complaint within the 21-day safe harbor provided by section 128.7, subdivision (c)(1) and that the trial court's "omission" to address this noncompliance "constitutes an abuse of discretion." We disagree.

Section 128.7 permits a trial court to impose sanctions if it finds submitted papers were either factually frivolous, legally frivolous, or filed for

---

[10] Mora does not challenge the trial court's exercise of discretion in declining to consider his late-filed special motion. We do not reach defendants' contention that Mora failed to establish a probability of prevailing on the merits.

15

an improper purpose. (*McCluskey*, *supra*, 56 Cal.App.5th at pp. 1204–1205.) To obtain sanctions for a factually frivolous claim—i.e., a claim " 'not well grounded in fact' "—or a legally frivolous one—i.e., a claim " 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law' "—the movant must show the nonmovant's "conduct in asserting the claim was objectively unreasonable." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440 (*Peake*).) "A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Ibid.*) To obtain sanctions for a submitted paper filed for an improper purpose, the movant must make a showing of " 'subjective bad faith on the part of the attorney or party to be sanctioned.' " (*In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 135.)

Section 128.7 sanctions "are not mandatory even if a claim is frivolous." (*Peake*, *supra*, 227 Cal.App.4th at p. 448.) While the Legislature intended for courts to "vigorously use its sanctions authority to deter . . . improper conduct" (§ 128.7, subd. (h)), "[c]ourts must carefully consider the circumstances before awarding sanctions" (*Peake*, at p. 448). Indeed, section 128.7, subdivision (c)(1) forbids a moving party from filing a motion "unless, within 21 days after service of motion, . . . the challenged paper . . . is not withdrawn or appropriately corrected." Even then, the court is required to "consider whether a party seeking sanctions has exercised due diligence." (§ 128.7, subd. (c).) And subdivision (d) limits the extent of sanctions "to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." (*Id.*, subd. (d).)

As other courts have stated, "section 128.7 should be utilized in 'the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper

16

purpose.' " (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1121; see also *Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167–168 [statutory sanctions " 'must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously' "].) Moreover, "[t]o be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Peake*, *supra*, 227 Cal.App.4th at p. 441.)

Here, defendants conceded they incorrectly asserted that a check was "delivered to [Mora's] attention (via his attorney)." In Mora's view, this "core misrepresentation" was the basis for the cross-complaint, rendering it "independently sanctionable for three reasons"—i.e., it was submitted for the improper purpose to harass and cause needless delay and costs; its legal contentions were frivolous; and its factual claims were groundless. In his opening brief, however, Mora constrained his discussion to the factually inaccurate statement. Accordingly, we may disregard the other purported grounds for section 128.7 sanctions. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' "].)[11]

We also dispatch Mora's claim that the trial court erred because it "failed to address" defendants' failure to correct the record within 21 days of service of motion. Mora mistakes the import of the safe harbor provision. It preludes the *movant* from filing a sanctions motion or "present[ing] [one] to

---

[11] Nor does the record provide any basis for finding the trial court erred. The sanctions motion merely made conclusory assertions that the cross-claims lacked a legal basis and were intended to harass. Mora failed to engage defendants' legal arguments, merely stating "[o]ne cannot seek indemnification for its own negligence," and made no real attempt to show defendants' subjective bad faith.

the court" if the nonmovant makes an appropriate correction within the 21-day window. (§ 128.7, subd. (c)(1).) In other words, the court may not even consider a motion until the 21-day period passes. Thus, there is no requirement that the court need "address" the nonmovant's "noncompliance with the safe harbor requirement."[12] Moreover, the safe harbor provision expressly reiterates the court's discretion in awarding sanctions, stating the court "may award" reasonable expenses and attorney fees to the prevailing party "[i]f warranted." (§ 128.7, subd. (c)(1).)

Here, the trial court explained that it considered "the totality of circumstances" before finding sanctions were not warranted. The order, while brief, was measured, and Mora did not include a transcript of the oral proceedings in the record on appeal. Accordingly, under a standard that calls upon us to presume the order under review is correct and to not substitute our judgment for that of the trial court, we find no abuse of discretion in the denial of sanctions. (*McCluskey*, *supra*, 56 Cal.App.5th at p. 1205.)

### III. DISPOSITION

The order is affirmed. Defendants are entitled to costs on appeal. (Rule 8.278(a)(2).)

---

[12] Conversely, "[w]hen *imposing* sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed." (§ 128.7, subd. (e), italics added.)

18

SMILEY, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A169997
*Mora v. Menjivar*

Trial Court:       Superior Court of Contra Costa County

Trial Judge:       John P. Devine, Judge

Counsel:

Andrew W. Shalaby for Plaintiff and Appellant.

Bledsoe, Diestel, Treppa & Crane, LLP, James M. Treppa and Irina Dmitriyev for Defendant and Respondent.